**NELSONVILLE ELECTRIC & MANUFACTURING CO., Plaintiff-Appellee,
v. MARSHALL, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5626.   Decided March 29, 1957.

Collis Gundy Lane, Columbus, for plaintiff-appellee.

James M. Hengst, Carrington T. Marshall, Columbus, for defendant-appellant.

(FESS and DEEDS, JJ, of the Sixth District, and HORNBECK, J., of the Second District, sitting by designation in the Tenth District.)

## OPINION

By FESS, J.

Appeal on questions of law from a judgment of the Municipal Court of Columbus, Ohio, rendered without a jury, in favor of the plaintiff in the sum of $815.71.

For a number of years defendant and Harry M. Runkle have owned a coal mine near Roseville, Ohio. This mine had been leased to Rose Hill Coal Company, which went into receivership on April 22, 1953. In June, 1953, defendant and Runkle purchased certain mining equipment from the receiver of their lessee and shortly thereafter such equipment suffered damage as a result of a fire. Negotiations were had between the plaintiff, an insurance adjuster, and a representative of the owners for the repair of the damaged machinery. Plaintiff had suffered loss as a result of the liquidation of the Coal Company and when it inquired of the adjuster about payment of the repair bill, he advised plaintiff that payment would not be made to the plaintiff, but would be made to the owners of the property. Plaintiff thereafter requested the defendant to guarantee payment and in response thereto defendant wrote plaintiff on July 13, 1953, as follows: "This is to assure you that the undersigned will assume responsibility for any labor and materials furnished to the mine at Roseville, Ohio, formerly owned by the Rose Hill Coal Company. Truly, Carrington T. Marshall." Thereafter plaintiff opened an account on its books in the name of Marshall & Runkle, and, upon completion of the work, on November 30, 1953, forwarded an invoice therefor in the sum of $1,296.49 to defendant. This invoice was endorsed paid in full on April 22, 1954. This invoice bears a notation written in ink,—"This is what was covered by your letter, H. M. R." The evidence fails to disclose whether this notation was made prior to or after plaintiff acknowledged payment in full on April 22, 1954. The invoice bears a further notation, "Please receipt & return to H. M. Runkle, 81 N. Drexel Ave. Columbus, Ohio."

On September 28, 1953, Rose Hill Coals, Inc. was organized, and either on October 1 or October 19, 1953, leased the mine and its equipment from defendant and Runkle and covenanted to keep the structures and equipment in good repair, and to maintain a reserve for such purpose. Thereafter, at the instance of Coals, Inc., the plaintiff performed work and furnished materials from November 18, 1953, to February 19, 1954, for which plaintiff rendered Coals, Inc., thirteen separate invoices aggregating $1,213.45. Although plaintiff claims, without positive proof thereof, that copies of the invoices rendered to Coals, Inc. were mailed to the defendant, the great preponderance of the evidence discloses that neither the defendant nor Runkle had any knowledge of these repairs or that defendant might be called upon to pay for them until January 19, 1955.

As above indicated, the account which defendant paid in the sum of $1,296.49 was carried in the name of Marshall & Runkle. The items in dispute were carried on plaintiff's ledger by way of continuation of the

former account of Rose Hill Coal Company which had been opened prior to 1950. This ledger sheet discloses the bad debt charge-off of the Coal Company in the fall of 1953 predated after the first charge against Coals, Inc. on December 8, 1953. No explanation is offered by the plaintiff as to why these subsequent charges were recorded against Coals, Inc. rather than by way of continuation of the Marshall & Runkle account. This sheet also shows a credit against the Coals, Inc. account of $397.74 as of January 25, 1954, and a bad-debt charge-off of $815.71 in 1955, without indicating the month or day.

The evidence further discloses that at the time the order was placed by Coals, Inc. the general manager of the plaintiff inquired as to who would be responsible for the payment of its account, was referred to the president of Coals, Inc. and discussed with such president the responsibility for deliveries to Coals, Inc. Nevertheless, several orders were delivered C. C. D., but the remainder were charged to the account of Coals, Inc.

On April 22, 1954, when plaintiff acknowledged receipt in full of its invoice rendered Marshall & Runkle, the work done at the instance of Coals, Inc. had been completed for over two months,—since February 19, 1954. Plaintiff must have been fully aware of defendant's letter of July 13 throughout the previous nine or ten months, and particularly when it failed to receive payment on its Coals, Inc. account after February 19.

Coals, Inc. ceased operations on April 22, 1954, and plaintiff has been unable to collect the $815.71 balance due on its account. Incident to the cessation of the business of the plaintiff, defendant's letter of July 13, 1953, was discovered, and after demand for payment made on January 19, 1955, was refused, the instant action was brought on November 22, 1955.

Although the instrument upon which the action is brought was prepared by the defendant, the rule that the language of a promise is to be construed most strongly against the promissor is not applied to the construction of a guaranty, and a guarantor is bound only by the express terms of his contract. **Morgan v. Boyer, 39 Oh St 324; Merchants National Bank v. Cole, 83 Oh St 50; National Bank v. Laidlaw, 86 Oh St 91;** Landman v. Sauerston, 24 O. C. C. N. S.), 478; **Cohn-Hall-Marx Co. v. Vanosdall, 25 Oh Ap 360.**

The language employed by the defendant is rather expansive in character and without specific limitation. As in the case of National Bank v. Laidlaw, supra, so far as the guaranty itself goes, its language is broad and full. The trial court decided that the word "any" referring to labor and material going into the mine and not to the owners or lessee, without words of limitation, distinguished the writing in the instant case from those construed in **Birdsall v. Heacock, 32 Oh St 177** and Morgan v. Boyer, supra. But the rule is well-established in Ohio that in construing a guaranty, the language used is to be understood in its plain and ordinary sense, as read in the light of surrounding circumstances, the situation of the parties, and the object of the guaranty, and that construction given which most nearly conforms to the intention of the parties. Parol evidence is not admissible to enlarge or limit the

terms of the instrument. But evidence of the surrounding circumstances is competent, in order to arrive at the intention of the parties, as declared by the words employed, which are to be construed in the light of such circumstances. Birdsall v. Heacock, supra; Morgan v. Boyer, supra; **Cambria Iron Co. v. Keynes, 56 Oh St 501; Merchants Bank v. Cole, 83 Oh St 50;** Bank v. Laidlaw, supra; **Storm & Sons v. Blanchet, 120 Oh St 13;** National Bank v. Garn, 3 O. C. C. (N. S.), 428; Cole v. Merchants Nat'l. Bank, 15 O. C. C. (N. S.), 315; Landman v. Sauerston, 24 O. C. C. (N. S.), 478; Cohn-Hall-Marx Co. v. Vanosdall, supra.

The chief difficulty lies in determining what interpretation should be put on a guaranty which is so worded that it may either extend to a series of sales or advances, or be limited to the first. Unless the language is sufficiently broad to show that it was meant to reach beyond the present, and render the guarantor answerable for future credits, it should be confined to the immediate transactions. Birdsall v. Heacock, supra. Accordingly, it is an established principle of construction that a guaranty will not be construed as continuing, unless the intention of the parties is so clearly manifested as not to admit of a reasonable doubt. Birdsall v. Heacock, supra; Morgan v. Boyer, supra; **Merchants Nat'l. Bank v. Cole, 83 Oh St 50; Storm & Sons v. Blanchet. 120 Oh St 13;** National Bank v. Garn, 3 O. C. C. (N. S.), 428; Landman v. Sauerston, 24 O. C. C. (N. S.), 478; **Cohn-Hall-Marx Co. v. Vanosdall, 25 Oh Ap 360; Goodman v. Alliance Bank, 11 Abs 626.** It has also been held that where, after construing the guaranty in the light of the surrounding circumstances, there is still doubt as to whether the guaranty was intended to be continuing, the presumption is that it was not so intended, and this presumption may be given effect. National Bank v. Garn, 3 O. C. C. (N. S.), 428. In Morgan v. Boyer, supra, the Supreme Court holds that if the language is equally capable of each construction, the one will be adopted which construes it to be limited, and not the one which construes it to be continuing.

In support of the judgment, plaintiff cites **Srutek v. Hart & Co., 1 Abs 374,** holding that a contract will be construed as a continuing guaranty if it appears that a future course of dealing for an indefinite time or a succession of credits is contemplated by the parties; and that unless the words in which the guaranty is expressed fairly imply that the liability is to be limited, it continues until revoked. The epitomized opinion does not reveal whether the guaranty was construed in the light of the circumstances surrounding its execution, and must be distinguished. To the extent it is at variance with the above principles decided by the Supreme Court, it is not to be regarded as persuasive.

Upon review of the record disclosing the circumstances surrounding the execution of the guaranty and the subsequent conduct of the parties in relation thereto, we find some conflict in the evidence with respect to such circumstances, and are therefore unable to find as a matter of law that judgment should be entered for the defendant. We do find, however, that the judgment is manifestly against the weight of the evidence and that it should be reversed and the cause remanded to the Municipal Court for a new trial. Costs to abide final judgment.

HORNBECK, PJ, DEEDS, J, concur.